IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

FILED

MAY 2 2005

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

S&L ENTERPRISES, INC., and            )
HARRY CHEATWOOD,                      )
                                      )
                Plaintiffs,           )
                                      )
vs.                                   )       No. CIV-05-171-W
                                      )
KAY CHEMICAL COMPANY, INC.,           )
and ECOLAB INC.,                      )
                                      )
                Defendants.           )

## ORDER

This matter comes before the Court on the Motion to Stay Proceedings filed by

defendants Kay Chemical Company, Inc. ("Kay Chemical"), and Ecolab Inc. ("Ecolab").

Plaintiffs S&L Enterprises, Inc. ("S&L") and Harry Cheatwood have responded in opposition

to the motion, and the defendants have filed a reply. Based upon the record, the Court

makes its determination.

S&L was in the business of selling water filtration systems for use in the preparation,

processing and service of food and beverages. In 1998, Ecolab purchased from S&L inter

alios substantially all of the assets of PFS-Puremark International, Ltd. ("Puremark") for

$9,500,000.00. The parties executed an Asset Purchase Agreement ("APA") that set forth

the obligations of the parties and the terms of payment.

This transaction also involved the execution of a consulting agreement between

Ecolab and Cheatwood, who was S&L's main shareholder and Puremark's former owner.

Under this consulting agreement, Cheatwood would receive a base salary and certain

incentives for a term of three (3) years. Additional consulting agreements were thereafter

executed, including a manufacturer's representative agreement between Cheatwood and Kay Chemical, which essentially renewed and/or extended the terms of the original agreement.

The plaintiffs have alleged in their complaint that on April 1, 2003, Ecolab transferred or sold substantially all of the assets it had purchased to Kay Chemical, a wholly-owned subsidiary. The plaintiffs have contended that the APA expressly provides that if Ecolab sells or otherwise disposes of all or substantially all of the purchased assets, S&L is to receive eighty percent (80%) of the net proceeds realized by such transaction, up to any unpaid balance of the $9,500,000.00. The plaintiffs have complained that they have not received any proceeds from the Ecolab-Kay Chemical transaction, and they have contended in Count I of their complaint that Kay Chemical tortiously interfered with S&L's contractual relations with Ecolab by "deliberately, maliciously and fraudulently agree[ing] to accept the transfer of Puremark labeled products, for no apparent cash value in order to deprive S&L of any proceeds from such transfer." Complaint (February 11, 2005) at 8, ¶ 41.

The plaintiffs have further alleged that this transfer of assets also necessitated a new commission-based agreement between Kay Chemical and Cheatwood and required Cheatwood to be compensated based on total sales generated by Puremark products. The plaintiffs have contended in Count II of their complaint that Ecolab placed pricing and market restrictions on these products for the "sole purpose . . . of intentionally depriv[ing] . . . Cheatwood of his compensation pursuant to his consulting agreement with Kay [Chemical]." Id. at 9, ¶ 53.

Both the APA and the relevant consulting agreement/manufacturer's representative agreement (hereafter "2003 CA") contain arbitration clauses.   Section 6(I) of the APA expressly provides in pertinent part that

"all disputes arising between [S&L] . . . , [Cheatwood] . . . and [Ecolab] . . . arising out of or relating to this Agreement or the making, performance or interpretation thereof, including alleged fraudulent inducement thereof, shall be resolved as set forth in this Section 6(I).  Disputes shall be . . . submitted to arbitration.  The arbitration shall take place in St. Paul, Minnesota, if arbitration is initiated by [S&L or Cheatwood] . . . .  The parties acknowledge and agree that the decision of the arbitrator shall be final and binding and that arbitration in accordance with this Section 6(I) shall be their sole and exclusive remedy . . . ."

Section XVI of the 2003 CA expressly provides that

"[a]ny controversy or claim arising out of or relating to this Agreement, or any breach thereof, including without limitation, any claim, that this Agreement, or any part thereof is invalid, illegal, or otherwise voidable or void, shall be submitted to final and binding arbitration before, and in accordance with the commercial rules of the American Arbitration Association, and judgement upon the award may be entered in any court having jurisdiction thereof. Such arbitration shall be held in St. Paul, Minnesota."

On October 5, 2004, S&L initiated an arbitration proceeding in Minnesota against Ecolab.   In their motion, the defendants have argued that S&L is now attempting to circumvent that proceeding by the commencement of this lawsuit on February 11, 2005. They have contended that because the plaintiffs' claims can only be pursued in arbitration proceedings in Minnesota, the Court must stay the instant action.

Title 9, section 3 of the United States Code provides that

"[i]f any suit . . . be brought in any of the courts of the United States upon an issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."

3

Before a stay is warranted under section 3, the Court must find that an agreement to arbitrate exists. E.g., Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997).[1] There can be no dispute in this case that the APA and the 2003 CA clearly contain valid arbitration clauses, governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Likewise, there can be no dispute that the parties that are subject to the terms of those two documents assented to the documents' terms, "intending to be legally bound thereby," APA at 1, and thus, agreed to submit all disputes "arising out of or relating to [the two] Agreement[s]"[2] to arbitration.

Accordingly, the Court (to the extent, if any, it is required and/or authorized to do so[3]) must next determine whether the plaintiffs' claims in this lawsuit fall within the scope

---

[1]A motion filed under section 3 requests the Court to refrain from further action in an ongoing lawsuit pending arbitration. It requires the Court to determine inter alia whether there is a written agreement to arbitrate among the parties. As long as a written agreement to arbitrate exists, there is no requirement that an arbitration proceeding actually be pending before a stay of litigation under section 3 may be granted.

[2]The existence and validity of the arbitration clause in the APA is evidenced by S&L's statements in its Demand for Arbitration dated October 5, 2004, that it "is a party to an arbitration agreement contained in a written . . . [APA] dated June 30, 1998," and that it is entitled to "arbitration thereunder."

[3]The Court is mindful that in certain instances where the parties have delegated the issue of "scope" to an arbitrator, the Court need only determine whether a valid agreement to arbitrate exists. "A party who consents by contract to arbitration before the [American Arbitration Association] . . . also consents to be bound by the [Association's] procedural rules . . . ." P&P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 867 (10th Cir. 1999); see 2003 CA, Section XVI ("[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be submitted to . . . arbitration before, and in accordance with the commercial rules of the American Arbitration Association"). Such rules give "[t]he arbitrator . . . the power to rule on . . . any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association Commercial Arbitration Rules R-7(a); e.g., id. R-1. The parties have disagreed over the scope of the two arbitration clauses and have submitted argument and authority on the same. Thus, the Court, to the extent it is permitted to do so, has engaged in a "scope" analysis. See Cummings v. Fedex Ground Package System, Inc., No. 04-1247, slip op. at 7 (10th Cir. April 20, 2005)(quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)("Where . . . the parties dispute 'whether an arbitration clause in a concededly binding contract applies to a

of those two arbitration clauses, and to do so, the Court must engage in "'a three-part inquiry.'" Cummings v. Fedex Ground Package System, Inc., No. 04-1247, slip op. at 7 (10th Cir. April 20, 2005)(quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001)).

> "'First, recognizing there is some range in the breadth of arbitration clauses, . . . [the] [C]ourt . . . [must] classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the [C]ourt must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains an arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'"

Id. (quoting Louis Dreyfus Negoce, 252 F.3d at 224)(emphasis deleted).

In accordance with the Tenth Circuit's instruction, the Court finds the arbitration clauses in the APA and 2003 CA are "broad" clauses, e.g., Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 398 (1967), and, as required to do so, acknowledges the presumption of arbitrability that arises from such clauses.

The plaintiffs' causes of action set forth in Counts I and II of the complaint seek actual damages for tortious interference with contractual relations. The plaintiffs grounded their causes of action on the APA and 2003 CA, and the factual allegations in their complaint touch on matters covered by those documents; furthermore, the plaintiffs' respective entitlement to relief, if any, clearly relates to, and implicates, the APA and 2003 CA. Accordingly, the Court finds the plaintiffs' claims must be arbitrated, regardless of the

---

particular type of controversy, [the question] is for the court.'")).

"tort" labels assigned to the same by the plaintiffs, since it is the factual basis of the claims that is important, and not the legal theories the plaintiffs have advanced, and despite the plaintiffs' arguments pertaining to the parties' status as signatories or non-signatories to the relevant agreements.[4]

Accordingly, upon being satisfied that the parties have agreed in writing to arbitrate the issues underlying the claims in this action, e.g., 9 U.S.C. § 3, the Court finds the stay requested by the defendants is warranted, and hereby

(1) GRANTS the defendants' Motion to Stay Proceedings filed on March 10, 2005;

(2) STAYS this matter pending arbitration[5] of the disputes between the parties; and

(3) DIRECTS the Clerk of the Court to administratively terminate this matter in his records until further order of the Court.

ENTERED this ____ day of May, 2005.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[4]All parties, S&L, Cheatwood, Ecolab, and by assignment, Kay Chemical, are signatories to the APA and "intend[ed] to be legally bound" by its terms. APA at 1; e.g., id. at 24, Section 6(f). As to the 2003 CA and Ecolab's relationship thereto, the plaintiffs themselves have alleged a nexus between the APA and the 2003 CA and, thus, for purposes of deciding whether the plaintiffs' tort claim in Count II is arbitrable, the Court assumes that Ecolab, as a signatory to the APA, which "necessitated the new commission-based agreement," Complaint at 7, ¶ 33, is entitled to seek a stay and invoke the arbitration clause in the 2003 CA.

Furthermore, federal policy favors arbitration, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983), and such policy would be nullified if the plaintiffs can avoid arbitration merely by naming an alleged non-signatory as the defendant or by casting their claims as tort claims rather than contract claims.

[5]The defendants have not requested the Court to compel arbitration and have moved the Court in the alternative, should the plaintiffs choose not to arbitrate the instant claims, to dismiss this action without prejudice. Until such time as the plaintiffs make known their election, the Court has determined that a stay rather than a dismissal of this matter is warranted.

6